RICKETSON & HOLT vs. J. & T. WOOD & CO.

1. The assignee of a note not negotiable can only recover of his assignor so much of the note as cannot, by due diligence, be made out of the maker.

2. A maker of such a note, who has the means of paying a sufficient portion of the debt to make it worth a suit, is not so insolvent as to entitle the assignee to recover of the assignor without suit.

## ERROR to St. Louis Court of Common Pleas.

GAMBLE & BATES, *for Plaintiffs, insist:*

1. The language of the statute is explicit that the assignor is not liable by reason of the insolvency of the maker, unless he be *so insolvent that a suit against him would be unavailing.* R. C. of '25. And surely a suit would not be unavailing, if a half, or a fourth, or a tenth part of the debt could be recovered. The Common Pleas Court thinks it would be unavailing unless the maker had property enough to pay *all his debts.* This Court, however, has expressed a different opinion. The suit would not be unavailing if the plaintiff could thereby make the money due or *any part of it.* Pococke vs. Blount, 6 Mo. R., 338—especially p. 345; and see Pillard & Dants, adm. 6 Mo. R., 58, full to the point. In 4 Pet. R., 366, Bank U. S. vs. Tyler, it is determined that the assignor is not liable until the assignee has diligently pursued all means of payment as against the maker. And to the same general purpose, see 2 Pet. R., 331, Bank U. S. vs. Weiseger, and a collation of cases in a note appended; and 3 A. K. Marshall, 59.

We suppose that the true meaning of the statute is, that the assignor is liable for whatever portion of money due on the note which the assignee cannot make by diligently pursuing the maker and his property in our own courts, and for nothing more.

It is also submitted that the court below erred in refusing to grant a new trial, because,

First, The court gave wrong instructions, and refused to give right ones, as above stated.

Second, Notwithstanding the wrong instructions of the court, the jury ought to have found the mixed question of law and fact—the insolvency—for the defendant. That it is a mixed question, see Pococke vs. Blount, *supra.* And the testimony would well warrant such finding.

3. Upon the facts of the case, and under one instruction given by the court, the jury ought to have found for the defendants, on the ground of the fraudulent conveyances made by Walker to Merry and to Payne.

POLK, *for Defendants, insists:*

1. The 1st and 4th instructions given on the prayer of the plaintiffs, and the 1st and 2nd instructions prayed by defendants and refused—particularly the second—raise the question whether, to entitle the endorsee of a note not negotiable to recover against the endorser, on the ground of the insolvency of the maker, that insolvency must be such as that *no part* of the debt could be made by suit, or only such that the whole of the debt could not be made.

The court below proceeded upon the principle that in order to a recovery by the endorsee against the endorser of a note not negotiable, it is not necessary to prove that no part of the debt could be made out of the maker by suit.

I maintain that the principle adopted by the Court of Common. Pleas is the true one applicable to the case.

2. In the instructions which the court below gave upon the question of the insolvency of Walker, the maker of the note, as for instance in the first instruction, it used the very language of the statute, when it said, "so that the institution of a suit against him would be unavailing." And in cases like the one at bar, it is obviously right and better, where an instruction is given with reference to the provisions of a particular statute, that the court should adopt and use the very language of the statute.

And so this court has ruled expressly in the case of Jacobs vs. McDonald, 8 Mo. R., 565, and that, too, upon this very statute.

3. The first instruction refused by the Common Pleas Court, upon the prayer of the defendant, was rightly refused; or in other words, that court committed no error prejudicial to defendants in refusing it.

First. It is the same in effect and purport as the first instruction given by the court on the prayer of the plaintiffs.

It was therefore no error to refuse it for that reason alone. Williams vs. VanMeter, 8 Mo. R., 339.

Second. It asks the court not only to say that Walker must have been insolvent at the time of the *maturity* of the note, in order to a recovery against the endorser, but also that such insolvency must have continued down to the commencement of the suit.

But it is clear, from the very language of the statute itself, that it was enough that Walker was insolvent at the *maturity* of the note. See statute.

4. The court committed no error in refusing the 2nd of the instructions it refused, that the defendants had asked.

This instruction *does not fix any time* at which it must have been shown that Walker was insolvent.

Under this instruction, if the court had been so unwise as to have given it, the plaintiffs' action would have been lost before the jury, if they had believed Walker solvent at any moment of time from the maturity of the note down to the very day of trial.

5. As to the third of defendants instructions refused, this instruction also was rightly refused.

First. According to this instruction, if the jury should find from the evidence that the transfers of property from Walker to Merry & Payne were fraudulent, they would be obliged to find for the defendants—even though they should find, that after said transfers had been made, Walker still had four or ten times as much property as would have paid all his debts.

Second. Again, the effect of fraud in the transfers of property from W. to Merry & Payne, is made as potential in the 3rd instruction given by the court already, at the prayer of the plaintiffs, as the defendants claim it shall be by this instruction. There is, therefore, no ground of exception in that respect.

But the third instruction, which the court had already given, differs from this, in that it requires that the property fraudulently transferred should have been sufficient, if it had been used for that purpose, to pay the just debts of Walker. And this, I contend, was a qualification of the instruction, which was legally proper and necessary.

6. To show that the instruction given by the *Nisi Prius* Court, upon the effect of the receipt given by Stratton, the agent of the plaintiffs, is unexceptionable, I need only refer to the very terms of the receipt as set out in the bill of exceptions.

7. I further contend that the Court of Common Pleas ought to have given the instruction prayed by the plaintiffs, which appears upon the record as the first one of the instructions refused by the court, that had been prayed by plaintiffs.

NAPTON, J., *delivered the opinion of the Court.*

This was an action of assumpsit, brought upon a promissory note made by William Walker, payable to the order of Ricketson & Holt, and assigned by them to the plaintiffs, J. & T. Wood & Co. The declaration consisted of two counts, one of which averred that Walker was so insolvent that a suit against him would be unavailing, and the other that he was a non-resident of the State. Plea, non-assumpsit. The plaintiff obtained a verdict and judgment.

Upon the trial, it appeared that a suit had been instituted by attachment against Walker, the maker of the note, which was litigated for several years, and was finally terminated by quashing the writ, in consequence of some informality.

The evidence was chiefly directed to prove Walker's insolvency, from the time the note matured up to the commencement of the present action.

Upon this subject, the court gave the following instructions, at the request of the plaintiffs:

"If the jury believe that William Walker executed the note mentioned in the declaration, to the defendants, and that defendants assigned it to the plaintiffs, and that on the 24th August, 1837, William Walker was insolvent, and so continued up to the commencement of this suit, so that the institution of a suit against him would have been unavailing, they must find for the plaintiffs."

"If the jury find that the said note was made and assigned as aforesaid, and that before the same became due said Walker had put all his real and personal property out of his hands, or had conveyed in good faith to other creditors all of his real and personal estate, so that he had no real or personal estate when said note matured, out of which the said debt could have been made, the plaintiffs were not obliged to bring a suit against the said Walker; such circumstances would justify the plaintiffs in regarding him as insolvent."

"If the jury believe from the evidence that the assignment of property by Walker to Merry & Payne, spoken of in the testimony, were fraudulent, and that if the property so transferred had been used to pay the just debts of the said Walker, that there would have been means sufficient to pay those debts, they will find for the defendants."

"It was not necessary that a suit against Walker should have been proceeded in to judgment, and the execution thereon returned unsatisfied, for want of property to levy it upon, before the plaintiffs could sue

the defendants in this case, if the jury believe from the evidence that Walker had not sufficient property to pay his debts, after the note sued on in this case became due."

The court refused to give the following instructions, asked by the plaintiffs:

"If the jury believe from the evidence that the plaintiffs instituted a suit against the said Walker, to the first term of the Franklin Circuit Court following the maturity of the note in said declaration mentioned, and that the said suit was unsuccessful by reason of the irregularity of the Clerk of the Franklin Circuit Court; and that, since the dismissal of said suit, the said William Walker has not been a resident of the State of Missouri, the plaintiffs have used due diligence in prosecuting their claim against Walker, and are in a position to maintain their action against the assignor of the note."

"If the jury believe from the evidence that before the first term of the Franklin Circuit Court following the maturity of the note in the declaration mentioned, the said Walker ceased to be a resident of the State of Missouri, and so continued up to the commencement of this suit, the plaintiffs are in a position to maintain their action against the assignors."

"If the jury believe from the evidence that the defendants assigned the note in the declaration mentioned, to the plaintiffs, by endorsement, the liability of the defendants thereon was not discharged, and they became liable to be sued by plaintiffs upon the occurrence of any of the circumstances mentioned in the statute as rendering the assignor of a note not negotiable liable to the holder."

"If the plaintiffs, being holders of a promissory note, not negotiable, sue the maker thereof, to the term of the court having cognizance of the suit, next following the maturity of the note, such suit is diligence, such as is sufficient to satisfy the statute."

"The holders of a note, not negotiable, are not obliged, in order to hold the assignor, to sue the holder by attachment. If the ordinary process of law, is not sufficient to realize for the holder, against the maker, the amount of the note or some part of it, he, the holder, is excused from proceeding by extraordinary means, such as attachment is."

"If the jury believe, that there were in June, July, or August, 1837, fraudulent conveyances of property by Walker, and further believe, that Walker was so insolvent on the 24th of August, and continued so down to the commencement of this suit, that a suit by these plaintiffs against him, could not have enabled them to recover the amount of the note here sued upon, they will find for the plaintiffs."

"If the jury believe from the evidence, that on the 24th August, 1837, William Walker was so insolvent, and continued so down to the commencement of this suit, that a suit by these plaintiffs against him, would not have enabled them to recover the amount of the note here sued upon, they will find for the plaintiffs."

"The mere finding by the jury of the fact that Walker in the summer of 1837, made fraudulent conveyances of his property, is not sufficient to discharge the defendants, Ricketson & Holt, from their liabilty to pay the note here sued upon; but unless the jury further believe that on the 24th of August, 1837, or at some time between then and the commencement of this suit, that by suing Walker the plaintiffs could have made the amount of this note, they will find for the plaintiffs."

The court gave the following instruction on behalf and at the request of defendants:

"If the jury believe from the evidence, that Merry & Walker were partners in a mill and milling, and in the slave trade, and if they also believe from the evidence, that Walker's property was applied to secure Merry for the amount of his advances, for carrying on the partnership business, to the prejudice of Walker's creditors, the jury are at liberty to consider such application of the property as fraudulent." And refused the following:

"Unless the jury find from the evidence, that William Walker the maker of the note sued on, was from the time the said note became due, to-wit: from the 22d day of August, 1837, until the time of the commencement of this suit, a non-resident of the State or insolvent, so that a suit against him would have been unavailing, they ought to find for the defendants, as to the assignment of said note."

"In order to enable the plaintiffs to recover on the assignment of the note in question, it is incumbent on the *plaintiffs to prove*, and not the *defendants* to disprove, the insolvency of the said Walker, and it is not enough for the plaintiffs to prove, that Walker had not enough property to pay *all his debts*, but that in fact, a suit against him would be unavailing to gain money."

"If the jury believe from the testimony, that the property of Walker, which was transferred to Merry and to Payne, (as stated by the witnesses) was unfairly and fraudulently transferred to them, or either of them, they ought to find for the defendants."

Exceptions were taken to the opinions of the court, on the points of law decided, and the case brought here by writ of error.

The only question presented by the record grows out of the instruc

tions. The statute which regulates non-negotiable paper, declares that a suit against the maker of a note, must first be instituted by the assignee, unless a suit would be unavailing. The question in this case is, whether the insolvency of the maker must be such, that the whole debt cannot be made out of him, or whether the assignee is bound to prosecute his suit against the maker, where a *part* of his debt may be made. The court below, by its instructions, seemed to determine that a suit would be unavailing, unless the entire debt could be made.

We think the statute designed, that the assignor should be liable only for so much of the debt, as could not be made out of the maker by a diligent prosecution of the claim. The assignor was made liable on a contingency, and that contingency is the insolvency or non-residence of the maker, so that a suit against him would be unavailing. Could a suit be said to be unavailing where a portion of the debt can be made?— Where the debt is five thousand dollars, and the maker is able to pay three, or four thousand, shall no effort be made to collect this amount, merely because the whole debt cannot be made? This construction of the statute, will not, we apprehend, lead to impracticabilities, as has been suggested at the bar. We do not suppose that the plaintiffs must show, that not one cent or one mill could be collected; but merely, that a suit would be unavailing. Where the expenses of the suit would be likely to overreach the amount collected, the labor would be a fruitless one. The burthen of the assignor would not be lessened by such a proceeding. The juries who try questions of fact, will understand very well that the law does not tolerate impracticable niceties; and because a debtor is in possession of fifty cents, wherewith to pay a debt of a hundred or a thousand dollars, they will not be likely to consider it wisdom in the creditor to pursue such a debtor. The question will be easily determined by laying out of consideration the fact that there is an assignor. Let the creditor, (the assignee,) be supposed to have no other resource than the maker of the note, and then ask himself whether, under the circumstances, it would be worth while to sue. If it would be proper or expedient to institute a suit, in the case supposed, then it is due to the assignor, that under the same or similar circumstances, a suit should be instituted for his benefit.

The other Judges concurring, the judgment is reversed, and the cause remanded.